Good morning, your honors. James Morris, appearing on behalf of Foster and Coco Stanback. This involves, to add to the court's variety of cases, this involves a construction case that the Stanbacks hired Mr. Lambert to do some work on building a house out in Pacific Palisades for them. Parties agreed to binding arbitration. We had the former presiding judge of San Diego County as the arbitrator in that case. That judge made a finding that Mr. Lambert had committed fraud by clear and convincing evidence in what he had done in submitting various invoices to my clients saying that this was for work that had been performed and it had not been performed. That matter was then confirmed by the Los Angeles Superior Court. Mr. Lambert went into bankruptcy. We then This is what you've given is sort of the 22nd soundbite description, right? That's right. Okay. At this point, your honor, we're up here because my client received the bankruptcy court's approval on the motion for summary judgment that it had. Bankruptcy appellate panel has remanded that, saying that it's issue still to be resolved on. The first issue, I think, is does the court have jurisdiction? At least that's been raised by counsel. And both the Dominguez and the Stanton cases stand for the proposition that if it's a legal issue, this court is properly involved in that process. We have the legal issue of issue preclusion. And we also have the issue that this was a bankruptcy court motion for summary judgment. So as a matter of law, the bankruptcy court did find that the that it was a non-dischargeable complaint that my clients were entitled to. And that the elements of that had been met. That's right. Now, this is de novo. So certainly we've provided all the information to the court. The bankruptcy appellate panel found two elements missing, I believe. Although part of the problem that we have with that is that the award that they did make kind of at the end has a throwaway that says all issues that are not precluded should be retried. And that's also part of our problem. The two finding of intent to defraud, the court found that in the arbitrator's award there was no finding of intent to defraud, nor the supplemental declarations in the motion for summary judgment there wasn't any kind of specific finding as to that. As well as did my clients rely on the representations. Now, the Molina case, if the arbitration award is not sufficient as supplemented by my client's declarations of the motion for summary judgment, Molina case allows us to imply this. And I think the problem that I had was as I look through the elements that are required, compare it to the facts that we have in this case, I don't see how the crux of the matter with the whether there was an intent by Mr. Lambert to deceive my clients by presenting invoices saying this is the work that's been done on this project. I'm hard pressed to find any other reason. The arbitrator said an argument could be made that he was merely negligent, but then the arbitrator said that's not the case. So somebody presents an invoice under the terms of the contract, it's only for work performed, is all that can be. The contract also has some language talking about how the contractor's honest and has integrity and all these various things. My clients presented this invoice. I don't know how there could be any other intent to deceive than someone presenting a document, making the representation, this is owed to me because this is the work that has been done, with the invoice having a dollar amount that's due on it. But the arbitrator didn't find fraud, right? The arbitrator did find fraud. The arbitrator found there was the arbitrator's award and then it was not clear. We supplemented that and the arbitrator did find that we were entitled to recover under our cause of action for fraud. I guess that's one way to look at it. And you know, one of the problems when I was in practice that I had with arbitration is arbitrators seem to be endemically impulsed to divide the baby. If one side was looking for $100,000 and the other side said it was zero, inevitably come in with $50,000. This sounded like an arbitrator who was saying, well, you know what, you could argue that this was fraud. That's what he said the first time, right? That's right. You could make a good argument that this was fraud. However, I think that, you know, whatever the merits of that argument are, the penalties here are enough that that's sufficient. Then you ask for clarification and he came back and said, I'm not sure any more clarification is necessary. I found he acted fraudulently. Therefore, they recovered and no punitive damages. But although he never comes out and says the magic language like common law fraud, does he? No, Your Honor, he does. In the, I believe the letter, if I could direct the Court to excerpt of records 101. In it, he says, I do not believe that additional clarification of my reward is required in light of my recent supplement. I found that Mr. Lambert acted fraudulently and therefore the standbacks can recover under the third cause of action. What page are you on now? That is excerpt of record 101. Okay. So, and the third cause of action was for fraud. So we do have that finding. To get back to my point of what is it that one is intending to do by presenting an invoice saying you owe me four, three, five hundred thousand dollars when the contract says that's what the invoice is for. I think that there's nothing else that can be said other than that's the intent for it. My clients, Mr. Standback, in his declaration, the motion for summary judgment, said this was presented to me. I accepted it as being for the work that was performed and therefore I paid it. And I think that's enough to satisfy the two elements that we have in the record. But certainly I think that Molina allows the court to look at the very specifics of the facts and I think when the court does look at those facts, the finding is that indeed my clients were unsophisticated. They were taken advantage by a contractor who they relied on. They had known him from church and in that situation, Your Honor, I think that the bankruptcy court's finding of fraud in this case and a non-dischargeable debt is appropriate. Okay. Got some time left for rebuttal. Here for me on the side at this time. I think that Mr. Morse, you represent the Standbacks. Yes. And you, Mr. Landau, represent Lambert. I do. The debtor. Do you want to make sure that's correct? They've had it just the opposite in our little notes here. I want to make sure it's correct for the record. The case flipped around. Originally it was an appeal by the debtor, the back reversed, and now we're up here in the reverse status. Your Honor, thank you, Louis Landau, for the debtor. So you've had even more than a moot court on this one. You argued it in front of a three-judge panel and now you get to it again. And we did. And the issues, and it was I think in courtroom one, and the issues switched around a little bit by the time we got here. I'd like to go directly to some of the statements that were just made. Mr. Morse was saying, how could there not be an intent to deceive when you give someone a bill that's wrong? Well, it could just be sloppy billing practices. That doesn't equate with intent to deceive. That's one of the things that hung up the bankruptcy appellate panel, is that there wasn't a finding of intent to deceive and it could be a sloppy billing practice. Let's look at the second thing that was pointed to you from the record, which linked back to the third cause of action of the complaint, where after post-award prompting, the arbitrator said, I found that he acted fraudulently and they can recover under the third cause of action. Well, there's the other problem. Because if you look at the original complaint, which is what the arbitrator is linking to, and we go to page 63 of the excerpts of record, paragraph 18 of the complaint, where it's listing the elements of a fraud claim, states that plaintiffs were reasonable and relying. That's not the standard for finding a non-dischargeable debt. It needs to be justifiable reliance. And that's the second element that the BAP said was not found here specifically and explicitly. So I appreciate Mr. Morris trying to link this up by bringing it back to the complaint, but the complaint doesn't do it. Because reasonable reliance is not justifiable reliance under the circumstances. If you go back and read the award, you'd find out why justifiable reliance is an issue here, because the standbacks never said anything about the bills when they got them. There was no support attached to them and they didn't ask for the support. Was that justifiable? Maybe, maybe not. The issue wasn't litigated and certainly was not found. Backing up, there are three steps, I think, to this appeal. First, there is a subject matter jurisdiction issue here because there was a remand from the Bankruptcy Appellate Panel. We are here on a mixed question of fact and law. Yes, review is de novo, but it's a mixed question of fact and law as to whether the elements for collateral estoppel have been met. And because there's a factual question involved, we should send this back to the trial court to do what the Bankruptcy Appellate Panel asked it to do, which is to analyze the elements. And that is why under the four factors for determining an exception to the review of a remand order, those elements are not met. We don't have a final judgment that's here. The only way that this court's review and result would expedite this process is if your honors hold that that was wrong, that those elements were found, although they're not. And then goes to the ultimate legal issue of whether collateral estoppel can really ever apply to have an arbitration award being deemed to support a non-dischargeable judgment. And your honors, that's where I find this case to get very interesting. And I was trying to prompt the Bankruptcy Appellate Panel to get to that issue, and it didn't. It stopped short because it stopped on the factual issue. But if the court were to find differently the Bankruptcy Appellate Panel and reach that issue, that legal issue, I'd like to bring to your honors attention, and I didn't give it to you in a letter, I should have, a Bankruptcy Appellate Panel opinion that's come out since the briefing closed. And it goes to these issues exactly. And that's the Kelleag decision, which is at 338 Bankruptcy Reporter 817, decided February 2nd, 2006. And when you're done with your argument, see the clerk for, there's a little form you fill out, makes a copy, give it to your opposing counsel. I will. Even more important than pointing to the Bankruptcy Appellate Panel opinion in the Kelleag case is the fact that this case is before the Ninth Circuit fully briefed and penned it on this issue of the collateral estoppel effect of an arbitration award. And it's queued up in a much more definite fashion in the Kelleag decision, so your honors should be aware that that's with the circuit presently. The law is clear that if there's an ambiguity regarding the effect, the collateral estoppel effect of a prior arbitration award, that the ambiguity is determined against the party trying to create collateral estoppel effect. There is clearly an ambiguity here. The BAP was not wrong. First, the appeal should be dismissed for lack of finality. Otherwise, it should be affirmed. Thank you, your honors. Rebuttal? Yes, thank you, your honor. Just briefly. As far as the justifiable reliance the counsel has brought up, I think that's something. If you, when reading the arbitrator's award, it goes into all the relationship that these folks had. Talks about my clients being wealthy and sophisticated in certain things. They're certainly not in a construction sense. I think that's probably self-evident by anybody who builds a house on a cost plus basis. It just doesn't make a whole lot of sense. But that's what happened in this case. And the arbitrator did find there was this ongoing relationship. And my clients, in doing what they did, were justified. And there is a lot of this language in the arbitration award talking about the relationship that the two of them had or that the two parties had in this case. As far as the issue of whether arbitration award can be entered for purposes under a bankruptcy court order, I think the Vandenberg case talks about that as a California Supreme Court case. And frankly, it seems that the law is pretty well settled in California with a policy that we want to encourage arbitration. Thank you, Your Honor. Okay. It's been submitted. Thank you. Case just argued will be submitted for decision. Thank.
judges: Ferguson, Siler, Hawkins